JAMES W. MOORE *v.* STATE

5239 410 S. W. 2d 399

## Opinion delivered January 9, 1967

[Rehearing denied February 6, 1967.]

*W. M. Herndon,* for appellant.

*Bruce Bennett,* Attorney General; *Fletcher Jackson,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant James W. Moore was convicted of possessing stolen goods and sentenced to one year. His appeal is grounded principally upon the contention that in-custody interrogation violated his constitutional rights. He cites *Miranda* v. *Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), and *Johnson et al.* v. *New Jersey,* 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772 (1966).

Shortly after midnight, December 18, 1963, appellant's parked car was spotted in a wooded area by two North Little Rock patrolmen. The car was kept under surveillance; and when Moore pulled out the police followed. During a chase for a considerable distance at varying high rates of speed, a box was thrown from the passenger side of the Moore car and in clear view of the pursuing officers. Within a matter of minutes Moore was apprehended and charged with driving while intoxicated.

The police immediately returned to the point where they saw the box thrown and found it contained several hundred silver dollars. Moore was jailed at approximately 1:00 a.m. Although the immediate charge was DWI, the evidence reflects no intoxication of any substantial degree. At approximately 8:30 a.m. that same morning Sergeant W. A. Tudor of the State Police, Criminal Investigation Division, entered Moore's cell on the ground floor for the purpose of questioning him. The chronology of their conversation is important and unfortunately not crystal clear. But a close study of the record leads to the conclusion it was in the following order:

Tudor first inquired of Moore whether he had talked to a lawyer and was told that Attorney Tom Ridgeway was on his way to the jail to talk to Moore. (Appellant contends that "at this very moment the interrogation or questioning should have ceased.")

Tudor then testified: "I told him that I wanted to talk with him briefly where he got this money and before I had a chance to advise him of his rights, he said he didn't steal the money." At this point Tudor told Moore that "he had a right to remain silent" and that he would make a record of their conversation for use in court. He also said Moore's lawyer "was on the way over." Moore then told Tudor the money was delivered to him by a man he refused to identify; that he knew it was stolen

and threw it out of the car because "he didn't want to get caught with it."

The foregoing is from the testimony of Sergeant Tudor in chambers. Moore there testified that he made only one statement. ". . . I just told him flat—I said, 'I havn't stolen no money, or anything, and I am not going to make any kind of a statement to you.' "

It should also be noted that the circumstances surrounding this short interrogation are far different from those in *Miranda* and *Johnson*. Sergeant Tudor and appellant Moore were well acquainted and on friendly terms. No threats, promises, etc., are indicated. Moore was far from being unintelligent.

The prerequisites for in-custody interrogation set out in detail in *Miranda* are not controlling in this case. The decision in that case was rendered June 13, 1966. Appellant's trial began May 20, 1966. The rules in *Miranda* are not applicable to cases which started before June 13. *Johnson*, cited by appellant, so holds, as well as our case of *Stewart* v. *State*, 241 Ark. 4, 406 S. W. 2d 313 (September 12, 1966).

The controlling case is *Escobedo* v. *Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964). Escobedo was denied the opportunity to consult with his lawyer and was not effectively warned of his right to remain silent. Such is not the case here. Based on substantial evidence the trial court found Moore had been timely advised of his right to remain silent. Furthermore, while advising Moore of his rights, it was suggested to him that "his lawyer was on his way." The inquisitor—not the accused as in *Escobedo*—is the one who broached the subject of an attorney, and we find it was clearly understandable to a man of appellant's intelligence that Sergeant Tudor was saying that Moore might not desire to talk to him until his attorney arrived. Moore, instead of indicating he wanted to first talk with an at-

torney, proceeded to voluntarily give his explanation of his possession of the stolen money.

The contention that the evidence is not sufficient to sustain the jury verdict is without merit, as is revealed by the summary recitation of the evidence. Absent his admission to Sergeant Tudor, appellant was placed in possession of property recently taken in the burglary of a home in Oklahoma. Under all the circumstances in evidence, the jury could well have reasoned that appellant had criminal knowledge. No explanation of such possession was offered the jury by appellant. *Fields* v. *State*, 219 Ark. 373, 242 S. W. 2d 639 (1951), and numerous other cases, hold that possession of recently stolen property, if unexplained to the satisfaction of the jury, is sufficient to sustain a conviction.

Affirmed.