WOODALL AND HICKMAN *v.* STATE.

4170 140 S. W. 2d 424

Opinion delivered May 20, 1940.

*John H. Wright,* for appellant.

*Jack Holt,* Attorney General and *Jno P. Streepey,* Assistant Attorney General, for appellee.

HUMPHREYS, J. The Prosecuting Attorney of the Eighth Judicial Circuit filed information against appellants in the circuit court of Clark county charging them jointly with unlawfully, wilfully, and feloniously taking, stealing and carrying away one two-year-old Hereford steer of the value of $40, the property of Dave Triplett.

Appellants were tried, convicted and adjudged to serve a term of eight years each in the state penitentiary as a punishment for the crime, from which judgment they have duly prosecuted an appeal to this court.

The first assignment of error urged for a reversal of the judgment of conviction is that the evidence is insufficient to sustain the verdicts of guilty and especially to sustain the verdict of guilty against Bryant Hickman.

Viewing the evidence in the most favorable light to the state, the record reflects that Dave Triplett was the owner of a two-year-old Hereford steer colored red with a white face, marked with an over half crop off and underbit in the right ear and branded with a "Bar U" on the right hip; that in the month of December, 1939, the steer was running on the open range along Sky Line Drive in Clark county and was fat; that it had horns about six inches long; that Red Thomasson, Morris Turner and Jackie Kirksey saw appellants in possession of a white faced red steer with a rope on him, one of them riding a horse, and the other walking driving the steer along Sky Line Drive going east in the direction of Dewey Woodall's home and coming from Bryant Hickman's father's home; that Newt Francis and Olin Thomasson about that time found where a beef had been butchered one-fourth of a mile from where Dewey Woodall lived, and one hundred and seventy-five yards from that point in a pine thicket found a steer's head with horns indicating the animal was about two years old; that the ears of the animal had been cut off; that prior to finding where the beef had been butchered the wife of Newt Francis had bought some beef from Dewey Woodall, and this caused him to make an investigation; that Wiley Finley bought some beef about the same time from appellant, and when they started to drive away

Bryant Hickman thanked him for buying it; that on or about the 21st day of December, 1939, Sherman Caver, a deputy sheriff, made an investigation of the affair and overtook appellants in a wagon with a can and two wash tubs full of beef; that he became suspicious and interrogated them; that Dewey said he had killed a yearling he had raised, and that the hide was in his barn; that it was a calf he had bought from Thomas Shepherd, and that the calf was not branded; that later in the day Dewey told him that the hide was off of a cow he had in a pasture at Claud Chancellor's; that he then went to the barn to see the hide, but did not see any brand on it at that time; that Dewey took him to the place where he had butchered the animal; but he did not find the head; that he then got the hide which was a large one and took appellants to Amity and then returned to the pine thicket where the animal was butchered, and Mr. Francis informed him where the head was, and they went there and found the head and finally one ear which had been covered up; that Bryant Hickman was present when he interrogated Dewey Woodall and said to him that Dewey was telling him right; that he then took the head, hide, and ear to Dave Triplett, and Dave Triplett identified them as being the hide, head, and ear of his two-year-old Hereford steer; that the head, ear, and hide were kept by Dave Triplett and were introduced for the inspection of the jury at the trial of the case.

Dewey Woodall testified in his own behalf and explained to the jury that the animal he killed was the calf of the cow he bought from Thomas Shepherd early in the spring of 1939, saying that it only weighed about one hundred and seventy-five pounds when dressed, and it only made a can and one tub of beef. He denied that he told the deputy sheriff the hide had no brand on it and denied telling the deputy sheriff that it was the hide off of a cow he had in the pasture of Claud Chancellor and claimed to have marked and branded the animal he killed himself. He also testified that when they butchered the animal, they did not cut the ears off and hide them, but that they left the head with the ears on it where they killed it. He also made the further explanation that the

animal he killed came up to M. T. Hickman's home off the range, and that he identified it as his own in the presence of Bryant Hickman, and that he got Hickman to help take it to his home and kill it and sell part of it.

They introduced Thomas Shepherd as a witness who testified he sold Dewey Woodall a cow and calf early in the spring of 1939, and that the calf was red and had a white face. They also introduced M. T. Hickman, the father of Bryant Hickman, and Ira Hickman, who testified that Dewey Woodall identified the white faced Hereford yearling that came in off the range as his property in the presence of Bryant Hickman, and that Dewey Woodall got Bryant Hickman to help him drive it home.

The testimony introduced by the state was sufficient to sustain the verdicts of guilty. There was ample evidence from which the jury might find that the steer was the property of Dave Triplett, and that both appellants took possession of it, killed and sold a part of it.

It is true that Dewey Woodall made an explanation to the effect that the animal was his own, and that he so informed Bryant Hickman, and that it was taken up, killed and partly sold under the belief that the animal belonged to him, Dewey Woodall. The rule is that the possession of recently stolen property, if unexplained to the satisfaction of the jury, is sufficient to sustain a conviction of larceny. The jury were not bound to receive the explanation, but it was their province to determine the reasonableness of the explanation made, and truth thereof. Such is the rule announced in *Daniels* v. *State*, 168 Ark. 1082, 272 S. W. 833; *Bowser* v. *State*, 194 Ark. 182, 106 S. W. 2d 176; *Morris* v. *State*, 197 Ark. 778, 126 S. W. 2d 93.

The evidence detailed above was sufficient to sustain the verdicts.

The appellants also assign as reversible error the failure of the state to substantiate a material allegation of the information filed in that the state made no proof of the value of the steer. It is not necessary to make the proof of the value of cattle when stolen in order for one

to be guilty of a felony of stealing same. Section 3140 of Pope's Digest is as follows: "Every person who shall mark, steal or kill, or wound, with intent to steal, any kind of cattle, pigs, hogs, sheep or goats, shall be guilty of a felony, and, upon conviction thereof, be imprisoned at hard labor in the penitentiary for any time not less than one year nor more than five years."

It is true that the court instructed the jury that in case they found appellants guilty of the crime charged they might assess a penalty of not less than one year nor more than twenty-one years. The court in directing the jury's right to assess the penalty at from one to twenty-one years did so under the provisions of § 3134 of Pope's Digest which provides as follows: "Whoever shall be guilty of larceny, when the value of property stolen exceeds the sum of ten dollars, upon conviction thereof shall be punished by imprisonment in the penitentiary not less than one nor more than twenty-one years. And when the value of the property stolen does not exceed the sum of ten dollars, by imprisonment in the county prison or municipal or city jail, not more than one year, and shall be fined in any sum not less than ten or more than three hundred dollars."

There is no difference in the two sections as to the necessary ingredients of the offense charged except in one proof of value is required, but not in the other. The other elements are identical. The only other difference between the two statutes is the penalty the jury might assess in case of conviction. In other words the information was good under either section, but the penalty for the commission of a felony by stealing cattle under § 3134 was not less than one nor more than twenty-one years where the value of the cattle stolen was more than ten dollars, whereas, under § 3140, it was unnecessary to prove any value of the cattle stolen in order to convict one of a felony. This error of the court may be and is corrected by reducing the penalty fixed by the jury at eight years to the maximum penalty fixed by § 3140 of five years. No prejudice could possibly result to the appellants by a reduction of the penalty imposed from eight years to five years.

Appellants also assign as error the refusal of the court to declare a mistrial when the prosecuting attorney was permitted to ask M. T. Hickman whether or not any of his other boys had been convicted. We think no prejudice resulted to appellants on this count under the record, which is as follows:

"Q. Yes, how many boys have you got?

"A. I have three boys.

"Q. All three of them have been convicted, haven't they?

"The Court: No, wait a minute, one of them is on trial here.

"Mr. Wright: Your Honor, I think that is cause for a mistrial.

"The Court: He didn't answer the question. You didn't even object to it.

"Mr. Wright: I want to ask for a mistrial.

"The Court: Overruled."

Appellants also assign as error the refusal of the court to allow them to prove that Dave Triplett gave a different description of the animal stolen than the one he gave during the trial. In other words they offered to show by George Wilson that Triplett before the trial claimed that he had lost a heifer and at the trial claimed that he had lost a two-year-old steer. The record does not sustain them in this contention. The record is as follows:

"Q. What did they tell you?

"A. Mr. Woodall told me it was a heifer.

"Mr. Lookadoo: We object to that, if your Honor please.

"The Court: You should have asked Mr. Triplett about that.

"Mr. Wright: If the Court please, Mr. Triplett testified—

"Mr. Huie: We object to Mr. Wright testifying from his chair.

"Mr. Wright: Did I have to ask Mr. Triplett something he had already testified to?

"Mr. Lookadoo: Our objection is he says it was not Mr. Triplett that told him that. Some other party told him that and that is what we are objecting to. If he asked him what Mr. Dave Triplett said, we think it would be competent, but we don't think it would be competent to ask what somebody else said about it.

"The Court: The Court will sustain the objection."

No error appearing, the judgments as modified are affirmed.