SHOOP v. STATE.

4398                                     190 S. W. 2d 988

Opinion delivered December 17, 1945.

*Howell & Howell*, for appellant.

*Guy E. Williams*, Attorney General and *Oscar E. Ellis*, Assistant Attorney General, for appellee.

MILLWEE, J. Appellant was charged in the Circuit Court with the crime of receiving stolen property in two informations filed by the prosecuting attorney on May 31, 1945. In the first information it was charged that appellant, on March 15, 1945, received four cases of spinach of the value of $10, the property of Joe Salsman, doing business as the Arkansas Canning Company, knowing said property to be stolen. The second information accused appellant of receiving eight cases of spinach on May 27, 1945, in the same manner. The cases were consolidated for trial. The court instructed the jury that a misdemeanor, only, was involved in the first information, since the testimony showed the value of the four cases of spinach involved in that charge to be less than $10. The jury acquitted appellant on the felony charge, but found him guilty of a misdemeanor on the charge contained in

the first information, leaving the punishment to the court. This appeal is prosecuted from the judgment of the trial court fixing appellant's punishment at six months imprisonment in the county jail.

Jim Dubberly was the warehouse foreman of the Arkansas Canning Company in Van Buren, Arkansas. His duties were to supervise the storage, labeling and shipment of canned vegetables. He was authorized by his employer at various times to sell damaged or "salvaged" canned goods that might be on hand. Mr. Salsman testified that he would point out the salvaged products to Dubberly who would make the sale and turn in the money on the same day. He also testified that Dubberly was never authorized to sell No. 1 spinach, or any products other than salvaged canned goods. These salvaged products were in bent or rusty cans, or cans which had sustained water damage from floods. The spinach exhibited in evidence was No. 1 spinach which was identified as the property of the canning company by the can and code number.

Dubberly testified that in March, 1945, he took four cases of No. 1 spinach from the warehouse, without authority, and delivered it to appellant who paid for the spinach in money and whiskey. When he delivered the spinach he asked appellant, "to keep quiet and not let anybody know 'cause it might get me in trouble." Dubberly made two or three sales of canned goods to appellant before the sale in March. He had authority to make these sales and, for that reason, he did not warn appellant to keep quiet about them. At no time did he have permission or authority to sell No. 1 spinach and he entered his plea of guilty to grand larceny for taking 14 cases without authority.

Vol Russell, chief of police of Van Buren, testified that he discovered several cases of spinach in the garage of Underwood's Taxi Stand covered with seat covers. After questioning some of the employees of the taxi stand, he went to appellant's apartment across the street and questioned him. Appellant told the officer the spin-

ach in the garage was his, and that he got it from a truck driver whose name he did not know. After questioning Dubberly, the officer took appellant into custody and procured a search warrant for his apartment, where two cases of No. 1 spinach and part of a third case were found. Dubberly was then arrested and confessed to taking the spinach without authority.

Appellant testified that he bought canned goods from Dubberly three or four times. He bought three cases of spinach in March, 1945, which were delivered to his room by Dubberly. He denied that Dubberly told him to keep quiet about the sale, or that he had any knowledge that Dubberly had no right to sell the spinach. Appellant first admitted, and then denied, that he told the chief of police that he got the spinach found in the garage from some truck driver. He and Dubberly were good friends and Dubberly owed appellant for taking him to Fort Smith to get whiskey.

The first assignment of error urged by appellant for reversal of the judgment is that the trial court erred in overruling his challenges for cause to the prospective jurors, Charlie Vyles and Clyde Watts. If it be conceded that the court erroneously refused to excuse the two prospective jurors for cause, still there is no showing in the record that appellant exhausted his peremptory challenges. Where a defendant fails to exhaust his peremptory challenges, he waives any error the court may have committed in not excusing a juror for cause. *Benton v. State,* 30 Ark. 328; *Wright v. State,* 35 Ark. 639; *Caldwell v. State,* 69 Ark. 322, 63 S. W. 59; *Holt v. State,* 91 Ark. 576, 121 S. W. 1072; *Smith v. State,* 205 Ark. 833, 170 S. W. 2d 1001.

Appellant's next assignment of error challenges the sufficiency of the evidence to support the verdict. In instruction No. 4 the court told the jury that the burden was on the State to prove beyond a reasonable doubt: first, that the property was stolen; second, that it belonged to the party alleged in the information; third, that the defendant received it in his possession; fourth, that

when he received it he did so with the knowledge that it was stolen; fifth, that he had the intention at the time he received it to deprive the true owner of his property and continued the larceny of it. This instruction covered every element of the offense charged. *Bryan* v. *State,* 179 Ark. 216, 15 S. W. 2d 312.

It is admitted by appellant that he received the spinach from Dubberly and had it in his possession. It is also admitted that the spinach belonged to the canning company, but it is earnestly insisted that the testimony is insufficient to show that the property was stolen, or that it was received by appellant with knowledge that it was stolen. It is argued that, since Dubberly was authorized by his employer to sell canned products which appellant had bought on other occasions, he had a right to assume that Dubberly had authority to sell the spinach involved in the charge upon which he was convicted. This argument fails to take into account the testimony on behalf of the State to the effect that Dubberly was without authority to sell No. 1 spinach of the type involved in this case. In view of this evidence, the association of the parties, and the further evidence that Dubberly requested appellant to keep quiet about the delivery of the three or four cases in March, 1945, we cannot say there was a lack of substantial evidence to support the verdict of the jury on this issue.

This court has long followed the rule that the possession of recently stolen property, if unexplained to the satisfaction of the jury, is sufficient to sustain a conviction either of larceny or receiving stolen property. *Sons* v. *State,* 116 Ark. 357, 172 S. W. 1029; *Mays* v. *State,* 163 Ark. 232, 259 S. W. 398; *Daniels* v. *State,* 168 Ark. 1082, 272 S. W. 833; *Bowser* v. *State,* 194 Ark. 182, 106 S. W. 2d 176; *Morris* v. *State,* 197 Ark. 778, 126 S. W. 2d 93; *Krokrich* v. *State,* 208 Ark. 208, 185 S. W. 2d 922. It was for the jury to determine the weight to be given the testimony of the witnesses and the inference to be drawn therefrom. The reasonableness and sufficiency of the explanation given by appellant of his possession of the property was a matter for the jury.

In his contention that the evidence is insufficient to prove the spinach was stolen, appellant argues that, even if the testimony of Dubberly is to be believed, he was guilty of embezzlement, not larceny, and appellant could not, therefore, be found guilty of the crime of receiving stolen property by receiving the embezzled property. In the case of *Atterberry* v. *State*, 56 Ark. 515, 20 S. W. 411, it was held that the felonious taking of goods from the owner's store by a clerk who had custody of them was larceny, and not embezzlement. The court said: "The articles taken were kept for sale by their owner in a store in which E. C. McBel had authority to be present and sell the goods. They were legally in the possession of the owner, even if for a time left in the custody of the salesman; and an appropriation of them by the latter was a trespass on the possession of the former, within the meaning of the law defining larceny."

It is also held generally, that one who knowingly receives property which has been embezzled is guilty of receiving stolen property where a statute in effect makes embezzlement a species of larceny, 53 C. J. 504. By § 3151, Pope's Digest, embezzlement of his employer's property by an employee is made a species of larceny and the statute provides that such employee "shall be deemed guilty of larceny, and on conviction shall be punished as in case of larceny." So in this case we think it is competent to convict for the crime of receiving stolen property whether Dubberly be deemed guilty of embezzlement or larceny in taking his master's property.

Appellant relies on the case of *Jones* v. *State*, 85 Ark. 360, 108 S. W. 223, in support of his contention that the evidence is insufficient to support the verdict. In that case Jones had purchased from one Ellison, cattle which belonged to Dr. Neice. Neice admitted in his testimony that, before he found the cattle in the possession of Jones, Ellison informed Neice that he had traded them to Jones and that he, Neice, consented to let the trade stand. Ellison also testified that he had authority from Neice to trade with Jones and that Neice sold some of the cattle received from Jones in the trade. This court

held the evidence insufficient to prove that Jones knew Ellison had no authority to dispose of the cattle, or that he received the cattle with the felonious intent to deprive the owner of his property. A mere recital of the above testimony from the Jones case is sufficient to demonstrate the lack of similarity between the facts of that case and the one at bar.

Appellant's last contention is that the court erred in refusing to give his requested instruction No. 1 as follows: ''The court instructs you that before you can find the defendant guilty as charged in the information on which he is being tried you must find beyond a reasonable doubt that the defendant bought or received the property in question knowing that it had been stolen, and in this connection the court tells you that if you find from the evidence that the prosecuting witness, Jim Dubberly, at the time it is alleged that he sold defendant the goods in question that he was employed by the Arkansas Valley Canning Company, in the capacity of foreman, and had been for several years prior thereto, and had with the knowledge and consent been selling the products of said company to any and all persons that wanted to buy and that the defendant knew that he had been selling spinach and other commodities, then the defendant had a right to assume that he had a right to sell same and the defendant would not be guilty of any offense by buying the spinach in question, and your verdict should be for the defendant.''

The first part of this instruction was fully covered in other instructions given. The effect of the second part of the instruction was to tell the jury that appellant had a right to assume that Dubberly had authority to sell the No. 1 spinach because of previous sales to appellant and others of salvaged or damaged canned goods. The instruction was peremptory. It precluded a consideration by the jury of evidence adduced on behalf of the State which, if believed, would have justified the jury in distinguishing between the authority of Dubberly to sell salvaged canned goods and goods of the kind appellant was convicted of receiving unlawfully. It was proper for

the jury to consider the matters set out in the instruction, along with all the other facts and circumstances, in determining whether the property was received by appellant with guilty knowledge, but the court may not tell the jury what inference it may draw from disputed facts. That is the province of the jury. The trial court properly refused the instruction.

Finding no error, the judgment is affirmed.